**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Jacksonville Division**

**HEATHER EDENFIELD**

       **Plaintiff,**

**v.**                           **CIVIL ACTION NO.:**

**SOUTHERN SCAPES LLC,
a Florida limited liability company,
FLORIDA ULS OPERATING LLC d/b/a
SOUTHERN SCAPES, a Florida limited
liability company, and FLORIDA ULS OPERATING LLC
d/b/a UNITED LAND SERVICES, a Florida limited
liability company**

       **Defendants.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF REQUESTED**

     **COMES NOW** Plaintiff Heather Edenfield ("Plaintiff" or "Ms. Edenfield"),

by and through the undersigned counsel, and hereby files this Complaint against

Defendant Southern Scapes LLC ("Southern Scapes"), Defendant Florida ULS

Operating LLC d/b/a Southern Scapes ("Southern Scapes-ULS"), and Defendant

Florida ULS Operating LLC d/b/a United Land Services ("ULS"), (collectively,

"Defendants"),  and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.    Ms. Edenfield is an adult female who currently resides in

Middleburg, Florida.

2.      Defendant Southern Scapes is a foreign limited liability company with its principal place of business in Green Cove Springs, Florida.  Defendant Southern Scapes does business in the State of Florida, including Clay County, Florida.

3.      Defendant Southern Scapes-ULS is a foreign limited liability company with its principal place of business in Jacksonville, Florida.  Defendant Southern Scapes-ULS does business in the State of Florida, including Duval County, Florida.

4.      Defendant ULS is a foreign limited liability company with its principal place of business in Jacksonville, Florida.  Defendant Southern Scapes-ULS does business in the State of Florida, including Duval County, Florida.

5.      Each Defendant has annual gross volume of sales made or business done of not less than $500,000.

6.      Each Defendant employs over 50 employees and is a covered employer within the meaning of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*. ("FMLA"), at all times relevant to this Complaint.

7.      This Court has jurisdiction over Ms. Edenfield's FMLA and Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA") claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 1132(e).

8.      At all times relevant herein, Defendants were Ms. Edenfield's

2

employer as a single integrated enterprise by: (1) having interrelation of
operations; (2) having centralized control of labor relations; (3) having common
management; and (4) having common ownership and financial control.

9.      At all times relevant herein, Defendants had an interrelationship of
operations where Defendants shared employees and resources to handle
management, accounting, employee hiring and firing decisions, employee pay
and benefits, employee management, operations, and administrative functions for
each company.

10.     At all time relevant herein, Defendant ULS and Defendant Southern
Scapes-ULS maintained centralized control of labor relations over Defendant
Southern Scapes employees, as Defendants ULS and Southern Scapes-ULS held
ultimate authority and control over employee hiring and firing decisions,
employee promotions, employee position assignments and titles, employee pay
issues, employee benefit plans, and employee policies and procedures.

11.      At all times relevant herein, Defendants maintained common
management, as Defendant ULS and Defendant Southern Scapes-ULS senior
management and executives also manage Defendant Southern Scapes
administrative and operational functions.

12.     At all times relevant herein, Defendants maintained common
ownership and financial control as Defendant Florida ULS Operating LLC is the
managing member of Defendant Southern Scapes-ULS and Defendant ULS,  and

3

assumes control of the assets and liabilities of both entities.

13.     Alternatively, Defendants are joint employers because:

        (a)     There was an arrangement between Defendants to share employees' services or to interchange employees;

        (b)     Defendants acted directly or indirectly in the interest of the other in relation to employees; and/or

        (c)     Defendants were not completely disassociated with respect to employees' employment and may be deemed to share control of employees, either directly or indirectly, because one employer controlled, was controlled by, or was under common control with the other.

14.     Defendants shared or co-determined matters governing the essential terms and conditions of their employees, including Ms. Edenfield's employment and such sharing or co-determining of control over such employees was either actual, or Defendants retained the authority or power to control them.

15.     Among the matters shared or co-determined by Defendants governing the essential terms and conditions of their employees' employment, including Ms. Edenfield's employment, include but are not limited to:

        (a)     the power or ability to hire and fire;

        (b)     the power or ability to supervise;

        (c)     the power or ability to determine the method and/or rate of employee compensation;

4

(d)     the maintenance of employee records; and/or

(e)     the power or ability to assess, grant, deny, or otherwise affect

employees' benefits.

16.     The allegations in this Complaint primarily involve acts and

occurrences while Ms. Edenfield was employed by Defendants in Duval County,

Florida and Clay County, Florida.  Accordingly, venue is proper within the United

States District Court for the Middle District of Florida, Jacksonville Division

pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2).

## FACTS GIVING RISE TO RELIEF

17.     Ms. Edenfield was continuously employed by Defendants from

approximately October 2020 to March 31, 2022.

18.     Ms. Edenfield's position with Defendants at the time of her

termination was as office manager.

19.     At all times relevant herein, Ms. Edenfield performed her duties in a

competent and satisfactory manner.

20.     One of Ms. Edenfield's supervisors at the time of her termination

was Defendant Southern Scapes CFO, Bill Hamilton.

21.     At all times relevant herein, Mr. Hamilton acted as an employee

and agent of Defendants.

22.     On or about March 18, 2022, Ms. Edenfield's doctor informed her

that she had a uterine tumor and would need to undergo an immediate

hysterectomy.

23.    The March 18th diagnosis was the first time Ms. Edenfield had been informed of the tumor and the need for surgical treatment.

24.    On or about March 21, 2022, Ms. Edenfield notified Mr. Hamilton of the March 18th diagnosis and need for immediate surgery and need for medical leave.

25.    Ms. Edenfield further notified Mr. Hamilton that the surgery and post surgery recovery could require Ms. Edenfield to be on leave from work for 3 to 8 weeks.

26.    Mr. Hamilton assured Ms. Edenfield that she could take whatever time was necessary, and that he would make sure Ms. Edenfield's medical insurance would not be cancelled while she was on leave.

27.    Ms. Edenfield reasonably relied upon Mr. Hamilton's representations that her job and medical insurance would be protected while she was out on leave.

28.    Ms. Edenfield also notified Defendants' other senior management and administrative employees of her upcoming surgery.

29.    However, neither Mr. Hamilton, nor any other senior management or administrative employees of Defendants notified her that she would be eligible for medical leave pursuant to FMLA.

30.    Further, Defendants failed to initiate a notice of FMLA eligibility,

request Ms. Edenfield to provide a certification for FMLA leave, or designate Ms. Edenfield's upcoming leave for the surgical procedure and recovery as FMLA leave.

31.     Ms. Edenfield had also not used or taken FMLA leave as an employee of Defendants prior to March 2022.

32.     On or about March 30, 2022, Ms. Edenfield's healthcare provider informed her that her surgical procedure would be scheduled to be performed on April 4, 2022.

33.     On or about March 31, 2022, Ms. Edenfield informed Mr. Hamilton of the date of surgery, and provided Mr. Hamilton documentation regarding the procedure.  Mr. Hamilton again assured Ms. Edenfield that she could take as much time as was needed.

34.     Still, neither Mr. Hamilton nor any other senior management or administrative employees of Defendants notified Ms. Edenfield of her eligibility for FMLA leave.

35.     Further, Defendants still failed to initiate a notice of FMLA eligibility, request Ms. Edenfield to provide a certification for FMLA leave, or designate Ms. Edenfield's upcoming leave for the surgical procedure and recovery as FMLA leave.

36.     On or about March 31, 2022, Ms. Edenfield's employment with Defendants was terminated.  However, Ms. Edenfield was not notified at this time

that her employment had been terminated.

37.     On or about April 4, 2022, Ms. Edenfield underwent a successful hysterectomy surgery.

38.     Ms. Edenfield did not attend work at the time of her surgery, and remained out of work during the following weeks while recovering from the surgery.

39.     On or about April 14, 2022, Ms. Edenfield attended a doctor's office visit as a follow-up to her surgery.  During this visit, Ms. Edenfield was told by the doctor's office staff that there was a problem with her medical insurance.  Ms. Edenfield then contacted Defendants' employee health insurance carrier, Florida Blue/Blue Cross Blue Shield, and was told that her medical insurance had been cancelled due to her employment ending on March 31, 2022.  This was the first time that Ms. Edenfield received any information about her employment with Defendants being terminated.

40.     Following the receipt of this information regarding termination of both her health insurance and employment, Ms. Edenfield made a number of attempts to contact Mr. Hamilton in order to inquire about her employment status, whether she had in fact been terminated, and if so the reason for her termination.

41.     Mr. Hamilton refused to answer Ms. Edenfield's calls and refused to respond to Ms. Edenfield's text messages making these inquiries.

42.     On April 26, 2022, Ms. Edenfield contacted Defendants' human resources representative to again try to determine why she was terminated and to obtain paystubs for her final paychecks.  Ms. Edenfield was still not provided any explanation for her termination, but was provided her last 4 paystubs in response to her inquiry.

43.     To date, no one from Defendants has provided Ms. Edenfield any formal notice of her termination, or any reason Defendants allege as to why she was terminated.

44.     The employee healthcare benefit plan for which Ms. Edenfield was eligible, and enrolled as a participant while employed with Defendants required that she be employed by Defendants to be eligible for such benefits.

45.     At all times during her employment with Defendants, Ms. Edenfield was enrolled in, and an active participant in, Defendants' employee healthcare benefit plan.

46.     All pre-surgery medical treatment Ms. Edenfield received as set forth above, was covered under Defendants' employee healthcare benefit plan.

47.     All surgery and post-surgery medical treatment Ms. Edenfield received as set forth above, would have been covered under Defendants' employee healthcare benefit plan if Ms. Edenfield remained employed with Defendants throughout her treatment associated with the medical conditions she was being treated for during this time.

48.     By terminating Ms. Edenfield's employment, Ms. Edenfield became ineligible for benefits except through limited continued coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA").  Ms. Edenfield does not allege a denial of COBRA benefits.

49.     Also as stated above, one harm alleged by Ms. Edenfield is that her employment with Defendants was terminated for exercising, and attempting to exercise her protected rights under pursuant to Defendants' employee healthcare benefit plan, not that specific benefits or access to benefits covered under the healthcare plan were denied.

50.     The administrative remedies of Defendants' employee healthcare benefit plan provides procedures to appeal denials of plan benefits or access to plan benefits.  The administrative remedies do not provide any procedure for an employee of Defendants to appeal their termination of employment.

51.     Moreover, the Defendants' employee healthcare benefit plan and its administrative remedial procedures do not provide authority for the plan administrator to render decisions regarding the length or location of Defendants' employees' employment.  Defendants' healthcare benefit plan only provides the plan administrator authority to render determinations of claims and rights of employee benefits administered under the healthcare benefit plan.

52.     Accordingly, Ms. Edenfield is not required to exhaust her administrative remedies through Defendants' healthcare benefit plan as such

exhaustion would be futile.  There is no mechanism for addressing Ms. Edenfield's termination from employment through that process and she lost her eligibility to participate in the plan at the time she was terminated from employment.

53.    As a result of Defendants' unlawful acts and practices, Ms. Edenfield has suffered and continues to suffer damages.

54.    All conditions precedent to bringing this action have been satisfied, waived or excused.

55.    This Complaint is timely filed.

56.    Ms. Edenfield has retained the undersigned law firm to prosecute this action, and has agreed to pay said law firm a reasonable fee for its services.

## COUNT I

### (Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615-Interference)

57.    Ms. Edenfield restates and realleges each and every factual allegation contained in paragraphs 1 through 48 and 53 through 56 of this Complaint with the same force and vigor as if set out here in full.

58.    Defendants engaged in commerce or other industry or activity affecting commerce and employed fifty (50) or more employees for each worker day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year.

11

59.     Defendants are employers under the FMLA.

60.     Ms. Edenfield was employed by Defendants for the 12 month period, and for at least 1,250 hours of service, preceding the prospective FMLA leave period.

61.     Ms. Edenfield was an eligible employee under the FMLA to receive twelve workweeks of leave during any twelve-month period because of her serious health condition.

62.     Ms. Edenfield notified Defendants of her serious health condition, and requested medical leave for a period of incapacity associated with her serious health condition.

63.     Defendants interfered with Ms. Edenfield's rights pursuant to the FMLA by, among other things, failing to notify Ms. Edenfield of her rights pursuant to the FMLA, failing to notify Ms. Edenfield of her eligibility for FMLA leave, discouraging Ms. Edenfield from asserting her FMLA leave rights, failing to provide Ms. Edenfield with medical leave pursuant to the FMLA, terminating Ms. Edenfield's employee healthcare insurance benefits, and terminating Ms. Edenfield's employment prior to being able to utilize FMLA leave, of which she was entitled.

64.     Defendants' actions and omissions were in violation of 29 U.S.C. § 2615 and applicable federal regulations.

65.     Defendants' violations of 29 U.S.C. § 2615 were willful and

12

committed in bad faith without reasonable grounds.

66.    As a direct and proximate result of Defendants' actions and omissions, by and through their employees and agents, Ms. Edenfield has suffered and continues to suffer damages including lost back pay, lost front pay, lost benefits and entitlements, loss of earning capacity, and other compensation denied or lost as a result of Defendants' actions.

**WHEREFORE**, Plaintiff Heather Edenfield, respectfully requests the Court to enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, granting damages for lost back pay, lost front pay, lost benefits and entitlements, loss of earning capacity, and any other lost economic damages; liquidated damages equal to the sum of the amount of actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3); pre-judgment and post-judgment interest; and granting such further relief as this Court deems just and proper.

## COUNT II

### (Violation of the Family and Medical Leave Act, 29 U.S.C. § 2615-Retaliation)

67.    Ms. Edenfield restates and realleges each and every factual allegation contained in paragraphs  1 through 48 and 53 through 56 of this Complaint with the same force and vigor as if set out here in full.

68.    Defendants engaged in commerce or other industry or activity

affecting commerce and employed fifty (50) or more employees for each worker

day during each of the twenty (20) or more calendar work weeks in the current or

preceding calendar year.

69.     Defendants are employers under the FMLA.

70.     Ms. Edenfield was employed by Defendants for the 12 month period,

and for at least 1,250 hours of service, preceding the prospective FMLA leave

period.

71.     Ms. Edenfield was an eligible employee under the FMLA to receive

twelve workweeks of leave during any twelve-month period because of her serious

health condition.

72.     Ms. Edenfield notified Defendants of her serious health condition,

and requested medical leave for a period of incapacity associated with her serious

health condition.

73.     Defendants retaliated and took adverse employment actions against

Ms. Edenfield for asserting, and attempting to her assert her rights pursuant to

the FMLA by, among other things, failing to notify Ms. Edenfield of her rights

pursuant to the FMLA, failing to notify Ms. Edenfield of her eligibility for FMLA

leave, discouraging Ms. Edenfield from asserting her FMLA leave rights, failing to

provide Ms. Edenfield with medical leave pursuant to the FMLA,  terminating Ms.

Edenfield's employee healthcare insurance benefits, and terminating Ms.

Edenfield's employment for requesting medical leave that would have been

14

covered under the FMLA.

74.   Defendants' actions and omissions were in violation of 29 U.S.C. § 2615 and applicable federal regulations.

75.   Defendants' violations of 29 U.S.C. § 2615 were willful and committed in bad faith without reasonable grounds.

76.   As a direct and proximate result of Defendants' actions and omissions, by and through their employees and agents, Ms. Edenfield has suffered and continues to suffer damages including lost back pay, lost front pay, lost benefits and entitlements, loss of earning capacity, and other compensation denied or lost as a result of Defendants' actions.

**WHEREFORE**, Plaintiff Heather Edenfield, respectfully requests the Court to enter judgment against Defendants, jointly and severally, and in favor of Plaintiff, granting damages for lost back pay, lost front pay, lost benefits and entitlements, loss of earning capacity, and any other lost economic damages; liquidated damages equal to the sum of the amount of actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3); pre-judgment and post-judgment interest; and granting such further relief as this Court deems just and proper.

## COUNT III

### (Violation of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140-Interference)

77.    Ms. Edenfield restates and realleges each and every factual allegation contained in paragraphs 1 through 4, 7 through 28, 32 through 33, and 36 through 56 of this Complaint with the same force and vigor as if set out here in full.

78.    The employee healthcare plan that Ms. Edenfield was covered under with Defendants was administered through Florida Blue/Blue Cross Blue Shield and is a medical benefit plan subject to ERISA protections.

79.    Defendants unlawfully interfered with Ms. Edenfield's attainment of her rights as a participant in Defendants' employee medical benefit plan in violation of ERISA, by among other things preventing Ms. Edenfield from fully utilizing her rights pursuant to Defendants' employee medical benefit plan, and wrongfully discharging Ms. Edenfield from employment in order to prevent Ms. Edenfield from fully utilizing her rights pursuant to Defendants' employee medical benefit plan.

80.    As a direct and proximate result of said acts and omissions of Defendants, Ms. Edenfield has incurred substantial losses including lost employment, lost back pay, lost benefits and potentially lost front pay.

81.    Ms. Edenfield has retained the services of the undersigned law firm

to represent her in this action, and has promised to pay said law firm reasonable attorneys' fees and costs for which Defendants are liable pursuant to the statutory provisions under 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Heather Edenfield, respectfully requests the Court to grant judgment against the Defendants jointly and severally, and to award Plaintiff equitable relief including: injunctive relief, reinstatement, restitution of lost benefits, back pay, front pay, pre-judgment and post-judgment interest, attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), court costs, and such further relief as the Court deems just and proper.

## <u>COUNT IV</u>

### (Violation of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140-Retaliation)

82.    Ms. Edenfield restates and realleges each and every factual allegation contained in paragraphs 1 through 4, 7 through 28, 32 through 33, and 36 through 56 of this Complaint with the same force and vigor as if set out here in full.

83.    The employee healthcare plan that Ms. Edenfield was covered under with Defendants was administered through Florida Blue/Blue Cross Blue Shield and is a medical benefit plan subject to ERISA protections.

84.    Defendants unlawfully retaliated against Ms. Edenfield by wrongfully discharging her employment as a result of Ms. Edenfield exercising her rights as a

participant in Defendants' employee medical benefit plan in violation of ERISA.

85.     As a direct and proximate result of said acts and omissions of Defendants, Ms. Edenfield has incurred substantial losses including lost employment, lost back pay, lost benefits and potentially lost front pay.

86.     Ms. Edenfield has retained the services of the undersigned law firm to represent her in this action, and has promised to pay said law firm reasonable attorneys' fees and costs for which Defendants are liable pursuant to the statutory provisions under 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Heather Edenfield, respectfully requests the Court to grant judgment against the Defendants jointly and severally, and to award Plaintiff equitable relief including: injunctive relief, reinstatement, restitution of lost benefits, back pay, front pay, pre-judgment and post-judgment interest, attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), court costs, and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Heather Edenfield hereby demands a jury trial on all issues and claims so triable.

Dated this 26th day of August, 2022.

Respectfully submitted,

The Law Office of Shands M. Wulbern, P.A.

By: /s/ *Shands M. Wulbern*
Shands M. Wulbern
Florida Bar No. 0155217
3000 Hartley Road, Suite 10
Jacksonville, Florida 32257
(904) 570-9233
swulbern@wulbernlaw.com

*Trial Counsel for Plaintiff*